**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **SAUL ORTEGA AND DAVID ROGERS** | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No.** _____ 4:19-CV-01078 |
| | § | |
| **UNITED STATES DEPARTMENT OF THE** | § | |
| **TREASURY** | § | |
| | § | |
| **Defendant.** | § | |

## COMPLAINT

Plaintiffs Saul Ortega and David Rogers ("Plaintiffs") bring this Complaint against the United States Department of the Treasury ("Defendant" or "Department") for violations of the Freedom of Information Act ("FOIA") and to compel the production of documents and would respectfully show the Court as follows:

### INTRODUCTION

The Americans who framed the Constitution believed that the power of appointment to offices was "the most insidious and powerful weapon of eighteenth century despotism." *Freytag v. Commissioner*, 501 U.S. 868, 883 (1991). The Framers crafted the Appointments Clause of the Constitution to protect the citizens and limit the diffusion of the power of appointments in government. They reasoned that by limiting the power to appoint, they would ensure that those who wielded it were accountable to political force and the will of the people. *Id*. at 884.

Plaintiffs Ortega and Rogers are respondents in an administrative proceeding within the Department where the administrative law judge ("ALJ") was not appointed by anyone accountable to political force or the votes of the citizens. Plaintiffs objected to the ALJ presiding over the case because the ALJ was not appointed by the President, with the advice and consent of the Senate,

nor, with the permission of Congress, by the President alone, the Courts of Law, or the Head of a Department.   U.S. CONST. Art. II, §2, cl. 2.   For this reason, the proceeding runs afoul of the Appointments Clause.

The Appointments Clause must be strictly enforced to ensure, as the Framers intended, that the voters have "someone to blame" for ALJ decisions.   *Lucia v. SEC*, 138 S. Ct. 2044, 2056 (2018) (Thomas, J., concurring).   As shown in this Complaint, the Department is resisting providing basic information about ALJ appointments that would allow Ortega and Rogers to test the government's compliance with this key constitutional requirement.

Following Justice Kagan's opinion in *Lucia v. SEC*, the ALJ handling Ortega's and Rogers' case was replaced and a new judge assigned.   Plaintiffs then objected to the new ALJ because he, too, had not been appointed consistent with the Appointments Clause.   Then, some party or parties hurriedly – and in the face of cogent objections briefed to the new ALJ – had Secretary Steven Mnuchin "ratify" certain judicial "assignments" that had already been made by lower level employees.   This happened well after Ortega and Rogers received substantive unfavorable rulings from ALJs now acknowledged to have been without legal authority to proceed.   Now, the Department will not disclose complete information showing the decisions and details surrounding the latest "fix" for the appointments.

The Appointments Clause is designed to prevent the diffusion of the appointment power. Plaintiffs suspect that the documents it seeks will show that the appointment power in this case was scattered across numerous personnel and agencies, including the OCC, the OPM, the OFIA, the FDIC, and possibly others, none of whom are authorized to appoint ALJs for this matter or are answerable to voters.   The Department should be required to provide full and complete disclosure regarding its selection of ALJs, as required by the Constitution and FOIA.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2.      Venue is proper in the Southern District of Texas under 5 U.S.C. § 552(a)(4)(B) because both Plaintiffs reside in the Southern District of Texas.

## PARTIES

3.      Plaintiff Saul Ortega is an individual residing in Texas and within the Southern District of Texas.

4.      Plaintiff David Rogers is an individual residing in Texas and within the Southern District of Texas.

5.      Defendant, the United States Department of the Treasury, is a United States governmental entity.  The Department may be served in accordance with Fed. R. Civ. P. 4(i)(2) by sending a copy of the summons and complaint by registered or certified mail to the department at 1500 Pennsylvania Ave., NW, Washington D.C. 20220.  The Complaint is also to be served upon the United States Attorney for the Southern District of Texas at 1000 Louisiana Street, Suite 2300, Houston, Texas 77002 and by sending a copy by registered or certified mail to the Attorney General of the United States at the U.S. Department of Justice, 950 Pennsylvania Ave., NW, Washington D.C. 20531-0001.

## FACTUAL BACKGROUND

6.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to order the Department to produce information regarding the appointment of administrative law judges under the United States Constitution.

### The Administrative Proceeding

7.      Plaintiffs Ortega and Rogers are Respondents in a pending administrative proceeding brought by the Office of the Comptroller of the Currency ("OCC") against them.  *In re*

**COMPLAINT – Page 3**

*Ortega & Rogers*, AA-EC-2017-44 & 45, United States Comptroller of the Currency, Department of the Treasury.    The OCC is a government bureau under the Treasury Department.

8.      The proceeding was commenced before ALJ Christopher B. McNeil on September 25, 2017.    The OCC seeks orders of prohibition against Ortega and Rogers under 12 U.S.C. § 1818(e) that would prohibit them from working in the banking industry and from participating in the conduct of the affairs of any insured depository institution.

9.      The administrative proceeding relates to the First National Bank of Edinburg, Texas, (the "Bank") which closed following the U.S. financial crisis after the United States failed to support the preferred stock of Fannie Mae and Freddie Mac.    Unlike the huge too-big-to-fail banks, the Bank received no federal bailout during the crisis and consequently failed.    Prior to the crisis, with the knowledge and encouragement of the OCC and the U.S. government, the Bank invested in the preferred stock of Fannie Mae and Freddie Mac.    The government's failure to support the preferred stock of Fannie Mae and Freddie Mac led to an immediate loss of $176 million for the Bank – over 60% of its capital – a loss from which the Bank could never recover.

10.      This bank failure was awkward for OCC regulators who had been responsible for monitoring the Bank and had approved the investments that caused the Bank to fail.  Searching for others to blame, the OCC brought charges against the many officers and directors of the Bank. Rogers was the Chairman of the Bank until November 2011, while Ortega was the CFO.  Ortega, with the support and encouragement of the OCC, later became President and CEO of the Bank.

11.      The Notice of Charges is based on stock transactions from 2009 to 2011, loans made from 2008 to 2011, and accrual practices from 2007 onward.    Ortega and Rogers have filed motions asking the ALJ to dismiss the case based on the five-year statute of limitations.    These motions have now been pending for more than one year.

12.      Rogers is 74 years old and has no involvement in the banking industry.  He resigned

from the Bank in 2011.  He does not foresee any return to the banking industry.

13.     Ortega is currently the Chairman and CEO of Texas National Bank ("TNB").  TNB is a certified minority owned bank of which there are approximately 35 in the United States.  TNB has provided banking resources to much needed areas in its geographic area.  At the time Ortega became the controlling shareholder of TNB's parent company, TNB was in less than satisfactory condition, receiving the lowest possible composite rating by the OCC.  Since then, Ortega has led TNB to improved ratings across all areas, strong risk management practices, capital and liquidity, earnings, and asset quality.  Under Ortega, TNB has grown total assets from $66m to $304m, and its Tier 1 capital ratio from 4.94% to over 9.21% as of year-end 2018.  At its most recent OCC examination, TNB received a satisfactory rating, and the overall condition of the bank is fundamentally sound.  At TNB, Ortega has shown to be an outstanding banker with strong performance, deep experience, and a positive working relationship with regulators.

## ALJs and The Appointments Clause

14.     Some commentators have observed that ALJs are perceived to be biased in favor of the government.  As Judge McNeil himself pointed out in his treatise on administrative law, "You might expect that the judge is going to decide your case impartially, based on the evidence presented, without favoring the government's side of the case . . . But it would be a mistake to believe that the black robe, the raised dais, and the courtroom environment have created an independent adjudicator."  ADMINISTRATIVE AGENCY LITIGATION, Christopher B. McNeil, at 7, 16 (calling relationship between adjudicator and prosecutor "too close for comfort.").  Consequently, many parties to administrative proceedings have filed objections to ALJs on various grounds, including the Appointments Clause of the United States Constitution.

15.     Ortega and Rogers objected to the ALJ in the administrative proceeding under the Appointments Clause, U.S. Const. Art. II, § 2, cl. 2.  Because the ALJs in OCC cases are not

appointed by the President, with the advice and consent of the Senate, nor, with the permission of Congress, by the President alone, the Courts of Law, or the Head of a Department, the ALJ appointments do not comport with the Constitution.   *Id*.

16.     In 2018, the Supreme Court concurred with the Fifth Circuit in this regard.   Both Courts have now held that ALJs are officers of the United States whose appointments must comply with the Constitution.   *Lucia v. SEC*, 138 S. Ct. 2044, 2056 (2018); *Burgess v. FDIC*, 871 F.3d 297, 299 (5th Cir. 2017).   Because ALJs were not so appointed, they lacked legal authority to proceed.

17.     Following the ruling in *Lucia*, the OCC removed Judge McNeil and reassigned Ortega and Rogers' case to a new ALJ, Judge Miserendino.

18.     However, Judge Miserendino's appointment suffered from the same flaws as Judge McNeil's.   Judge Miserendino's re-appointment had been quickly orchestrated following the *Lucia* decision and had come only from the OCC, a mere bureau, which does not meet the requirements of the Constitution.

19.     On August 30, 2018, Ortega and Rogers objected to the authority of Judge Miserendino to proceed because, among other things, he had not been appointed by either President Trump or the Secretary of the Treasury, Steven T. Mnuchin.   *See* U.S. Const. Art. II, § 2, cl. 2.

20.     On November 19, 2018, after the Appointments Clause issue was fully briefed before Judge Miserendino, and the failures of the appointment pointed out, OCC Enforcement Counsel provided Plaintiffs with a one page document, listed as "Attachment 1," purporting to be Secretary Mnuchin's retroactive "ratification" of the ALJ "assignment."   The document is dated November 15, 2018 and is attached hereto as **Exhibit A**.   No main document was provided and no further detail given.   On November 20, 2018, OCC counsel amended their response and filed the document with ALJ Miserendino.

21.     On November 26, 2018, Plaintiffs made the FOIA request at issue in this case in order to obtain complete information about Secretary Mnuchin's action and to obtain sufficient information to respond to the OCC's brief.  On December 5, 2018, Plaintiffs requested that Judge Miserendino grant a continuance pending a conclusion of the FOIA matter.  No ruling has been made to date.

### Plaintiff's FOIA Request

22.     On November 26, 2018, Plaintiffs sent a FOIA request to the Department of the Treasury.  The request is attached hereto as **Exhibit B-1**.  The request seeks copies of the complete document, including all main documents, attachments and appendices, constituting the "Ratification of Administrative Law Judge Appointments" dated November 15, 2018.  It also seeks documents provided to or reviewed by Secretary Mnuchin.

23.     The request sought expedited treatment by December 3 in order to meet briefing deadlines imposed by the ALJ.  This request was ignored.  Plaintiffs followed up on December 7 and then again on December 17.  *See* **Exhibit B-2**.

24.     On December 19, 2018, the Department responded by denying the request for expedited treatment and stating that "a search for responsive records is being done."  *See* **Exhibit B-3**.  On December 20, 2018, Plaintiffs appealed the denial of expedited treatment, because, among other things, a decision was not made within 10 days as required under 31 C.F.R. 1.5(e)(4).  *See* **Exhibit B-4**.  No response to the appeal has been provided to date.

25.     On February 8, 2019 and then again on February 14, 2019, Plaintiffs followed up with the Department.  These communications are attached hereto at **Exhibit B-5**.

26.     On February 15, 2019, the Department finally responded.  The Department's response is attached hereto as **Exhibit B-6**.  The response contained 13 pages of heavily redacted documents.  These pages, which are subject of this Complaint, are attached hereto as **Exhibit C**.

27.     On February 18, 2019, Plaintiffs appealed the Department's decision.  *See* **Exhibit B-7**.  The Department has not responded to the appeal and the time to do so under applicable law has passed.

## CAUSES OF ACTION: FOIA VIOLATIONS

28.     Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

29.     The Department has identified 13 pages of records responsive under FOIA but refuses to produce complete copies of the documents.   The Department's refusal to produce complete, unredacted copies of the documents violates 5 U.S.C. § 552(a).

30.     The Department's sole basis for its refusal to comply is based on its untimely assertion of the exemptions contained in Sections 552(b)(5) and (6) of FOIA.  These appear to be no more than simply blanket assertions of privilege.    The documents requested are not privileged and the Department's privilege claims should be overruled.

31.     First, the Department has waived its objections to the production of documents.  A response was due within twenty days of November 26, 2018.  These objections were not made until February 15, 2019, well after the deadline.

32.     Second, the Department's assertions of privilege are not valid and have been waived because they are generic boilerplate assertions that do not invoke the protections of any privilege. To assert a privilege, a party must identify the privilege and describe the information withheld.  "A blanket assertion of privilege is insufficient."  Patrick E. Higginbotham, 6 MOORE'S FEDERAL PRACTICE – CIVIL § 26.90.  Here, the Department makes a generic statement that the withheld information is that which is "normally privileged in the civil discovery context. The three primary, most frequently invoked privileges that have been held to be incorporated into Exemption 5 are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege."  *See* Ex. B-6.  This shotgun approach is not permissible.  To invoke a privilege, enough

information must be supplied to determine whether the asserted privilege is applicable.  Here, one cannot tell what privilege is even being asserted, let alone whether it is applicable.

33.     Third, no privilege applies to these documents.   Plaintiffs request an *in camera* review – and a privilege log – to determine whether any privileged material exists.   The deliberative process privilege does not cover factual matters or decisions.  The attachment 1 to the memo from Joseph M. Ottig appears to be an appointment document that could not possibly be covered by any privilege.  We suspect many of the other redacted items are similar in nature.

34.     Fourth, even if the deliberative process privilege applied to some of the redacted sentences, such privilege is only a qualified privilege and can be overcome.  *Harding v. Dallas County*, 2016 U.S. Dist. LEXIS 177937, *32-34 (N.D. Tex. 2016).  In this case, the Appointments Clause of the United States Constitution and the Supreme Court cases interpreting it require that OCC ALJs be actually appointed – not just ratified – by the Secretary of the Treasury.  The law strictly prohibits the diffusion of the appointment power among various officials, including the delegation of such power to a lower official such as Mr. Ottig.  Thus, it is of great importance to determine whether Secretary Mnuchin made an appointment or whether he simply was asked to sign off, retroactively, on an unlawful appointment previously made by someone else – like the Office of Personnel Management or the OCC.  The documents sought may prove or disprove whether the Constitution was followed in this instance.  Because this information is highly relevant and goes to an extremely serious matter, any deliberative process concerns are outweighed in this case.

35.     Fifth, the privilege asserted is also not applicable in this case pursuant to the "secret law" exception to the privilege.   Here, the government is attempting to hide under a veil of privilege the nature of its appointments.

36.     Sixth, the privileges asserted should be deemed to be unconstitutional when applied

here because they violate the Appointments Clause and the Due Process Clause.  The Constitution entitles citizens to know the details of government appointments and to be able to test compliance with the Appointments Clause, regardless of any privilege.

37.     This Court has jurisdiction to enjoin the Department from withholding these documents, to order the production of the documents, and to review such documents *in camera* to determine whether any exemptions asserted are appropriate.  5 U.S.C. § 552(a)(4)(B).  The burden is on the agency to sustain its action.  *Id*.

38.     Plaintiffs are also entitled to recover their attorneys' fees and expenses as substantially prevailing plaintiffs under 5 U.S.C. § 552(a)(4)(E).

## RELIEF REQUESTED

39.     Plaintiffs pray that the Court undertake an *in camera* review of the unredacted documents and order the Department to provide a privilege log; following which, the Court shall enter judgment in favor of the Plaintiffs and further order and declare that:

a.  The Department be compelled, ordered, and enjoined to produce complete and unredacted copies of the materials attached as Exhibit C;

b.  The Department provide all other responsive documents, if any;

c.  The Department's response to Plaintiff's FOIA request violated FOIA because it was untimely;

d.  The Department's assertions of privilege are overruled;

e.  Plaintiffs shall be entitled to their costs and attorneys' fees; and

f.  Plaintiffs shall be entitled to such further and other relief as the Court may deem just and proper.

Dated: March 22, 2019

Respectfully submitted,

By:   /s/ *Frank Brame*
Frank C. Brame
Texas Bar No. 24031874
The Brame Law Firm PLLC
3333 Lee Parkway, Suite 600
Dallas, Texas 75219
Telephone: (972) 755-9489
Fax: (214) 665-9590
frank@bramelawfirm.com

Bill Sims, Esq.
Texas Bar No. 18429500
4234 Shorecrest Drive
Dallas, TX 75209
Phone: 214.458.6970

bsims1119@gmail.com